LEONARDO ORTIZ y OTROS, demandantes y recurridos, *v.* SU-PERINTENDENTE DE LA POLICÍA, demandado y recurrente.

*Número:* CE-89-766          *Resuelto:* 4 de enero de 1993

*Jorge E. Pérez Díaz, Procurador General,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogados del recurrente; *Edwin Ortiz Rivera,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El presente recurso requiere que armonicemos el poder de sancionar que la ley le ha reconocido a dos (2) agencias administrativas: la Policía de Puerto Rico y la Comisión de Investigación, Procesamiento y Apelación.

I

Los demandantes recurridos eran miembros de la Policía de Puerto Rico.[1] El 10 de diciembre de 1985, el Superinten- dente de la Policía emitió una resolución que ordenaba la expulsión de los recurridos de dicho cuerpo. Los hechos que provocaron tal actuación ocurrieron el 25 de febrero de 1981. Ese día, algunos de los recurridos participaron en un operativo en el Municipio de Coamo que tenía como propósito lograr el arresto del Sr. Wilfredo Sánchez Ortiz, quien se había evadido de la Cárcel del Distrito de Ponce donde extinguía una condena por el delito de escalamiento agravado. La intervención policíaca culminó con la muerte del fugitivo Sánchez Ortiz.

Las circunstancias que rodearon la muerte del prófugo provocaron una serie de investigaciones que realizaron varias agencias del Gobierno. En primer lugar, la Policía de Puerto Rico practicó una pesquisa en 1981. El capitán Ortiz Ruiz, uno de los recurridos y supervisor de los agentes que participaron en el operativo, realizó una investigación administrativa de los hechos y rindió un informe con sus determinaciones. El funcionario concluyó que el agente Jimmy González actuó en defensa propia al dispararle al señor Sánchez Ortiz mientras este último, con un puñal y un arma de fuego, se resistía violentamente al arresto. Ese mismo año, el Negociado de Investigaciones Especiales del Departamento de Justicia (en adelante el N.I.E.) también realizó una investigación de los hechos. Dicho cuerpo llegó a iguales conclusiones.

En 1984, el agente Rivera Zaragoza, uno de los policías que participó durante el arresto del señor Sánchez Ortiz, ofreció su testimonio mediante el cual delató el asesinato

---

[1] Los recurridos son el Cap. Leonardo Ortiz Ruiz, Sgto. Ismael Serrano Sánchez, Agte. Juan Sánchez Santiago, Tnte. Juan J. Veguilla Martínez, agente Santos Rodríguez de Jesús, agente Tomás Rivera Ruiz, policía Pedro Colón Gaudino, policía Jimmy González González y agente José O. Ortiz Rodríguez.

del señor Sánchez Ortiz y el posterior encubrimiento. Ello provocó que el N.I.E. realizara una segunda investigación. Esta última pesquisa reveló lo siguiente: Luego de una búsqueda, los recurridos encontraron al prófugo Sánchez Ortiz. El agente Rivera Zaragoza lo detuvo y le indicó que estaba bajo arresto. Le ordenó que levantara las manos y que se pusiera de espaldas. El agente Beltrán Green registró al fugitivo y no le encontró armas. Rivera Zaragoza le ordenó que se arrodillara, lo cual hizo. Fue entonces cuando apareció el agente Jimmy González quien, sin necesidad ni justificación alguna, le disparó repetidamente a Sánchez Ortiz, ocasionándole heridas en la espalda y en el lado izquierdo de la cabeza que le ocasionaron la muerte días más tarde. El N.I.E. también concluyó que los recurridos se reunieron con su supervisor, el recurrido Ortiz Ruiz([2]) —en ausencia del agente Rivera Zaragoza([3])— para planificar el encubrimiento de los hechos. Acordaron declarar que el agente Jimmy González había actuado en legítima defensa cuando Sánchez Ortiz, con un puñal y un arma de fuego, resistió el arresto.

El 7 de diciembre de 1984 el Agente Especial del N.I.E., a cargo de la segunda investigación, rindió su informe final en el cual recomendó lo siguiente: (1) que se presentara una acusación por el delito de asesinato en primer grado contra el policía Jimmy González; (2) que se presentaran acusaciones por el delito de omisión en el cumplimieto del deber contra los agentes que intervinieron en el arresto, y (3) que se le notificara este asunto al Superintendente para que tomara cualquier acción que estimara propia contra los agentes investigados. El 21 de febrero de 1985, dicho

---

([2]) Como ya dijimos, el capitán Ortiz Ruiz dirigió la primera investigación de los hechos para la Policía y recomendó que se exonerara al agente Jimmy González.

([3]) Ya que Rivera Zaragoza se negó a declarar algo contrario a lo sucedido, el recurrido Ortiz Ruiz preparó una declaración a maquinilla en la cual Rivera Zaragoza aparecía afirmando que no sabía nada de lo ocurrido al prófugo. Posteriormente, Ortiz Ruiz se la entregó a Rivera Zaragoza para que la juramentara. Rivera Zaragoza, presionado y temeroso, juró la declaración ante la Juez Luzgarda Vázquez.

agente del N.I.E. presentó las denuncias, según fueron recomedadas, ante el Tribunal de Distrito, Sala de Aibonito.([4]) Ese mismo día, el Superintendente suspendió sumariamente de empleo y sueldo a los agentes mientras la agencia bajo su mando investigaba el asunto.

El 5 de marzo de 1985, el Superintendente refirió el asunto al Director del Negociado de Servicios de Inspección y Asuntos Disciplinarios de la Policía para que éste practicara la correspondiente investigación. El 12 de marzo, el director interino del referido negociado solicitó al N.I.E. las copias de las declaraciones juradas y demás evidencia que había recopilado durante su investigación. El 9 de abril, el Superintendente recibió el expediente del N.I.E. que contenía la información solicitada.

Tras la investigación administrativa de la Policía, el Superintendente notificó las resoluciones de cargo durante los meses de julio y agosto de 1985. Así, les indicó a los recurridos que se proponía expulsarlos de la Policía y les informó de su derecho a solicitar una vista informal. Acogiéndose al apercibimiento de dichas resoluciones, los recurridos requirieron la celebración de una vista administrativa. Ésta se celebró, y el 10 de diciembre de 1985 el Superintendente se reafirmó en su decisión y expulsó permanentemente a los recurridos. Oportunamente, los agentes despedidos presentaron sus apelaciones ante la Comisión de Investigación, Procesamiento y Apelación (en adelante la C.I.P.A.).

Luego de celebradas varias vistas ante C.I.P.A., el 21 de abril de 1986 se dictó una resolución que confirmaba la

---

([4]) Se añadieron unas acusaciones por el delito de encubrimiento (Art. 236 del Código Penal, 33 L.P.R.A. sec. 4432). Posteriormente, mediante Sentencia de 3 de septiembre de 1985, el Tribunal Superior, Sala de Aibonito, desestimó las acusaciones por encubrimiento debido a que dicho delito había prescrito. En cuanto a Jimmy González, un Jurado le declaró no culpable del delito de asesinato en primer grado. Los señores Veguillas Martínez, Ortiz Ruiz, Rodríguez de Jesús y Beltrán Ruiz fueron absueltos del delito de omisión en el cumplimiento del deber.

actuación del Superintendente. Inconformes, los recurridos solicitaron la revisión judicial de dicha determinación.

Luego de varios trámites, el 12 de septiembre de 1989 el Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida), expidió el auto solicitado, dejó sin efecto la resolución recurrida y le ordenó al Superintendente que restituyera a los recurridos en los puestos que ocupaban. Además, ordenó el pago de salarios y beneficios dejados de recibir, retroactivo a la fecha en que presentaron su apelación ante la C.I.P.A. Fundamentó su decisión en que el Superintendente había actuado sin jurisdicción al imponerles la expulsión pasados los ciento veinte (120) días que la Ley Orgánica de la C.I.P.A. —Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 171 *et seq.*— dispone para que la autoridad facultada para sancionar imponga medidas disciplinarias. El tribunal entendió que el 21 de febrero —fecha en que se presentaron las denuncias contra los policías y en que el Superintendente los suspendió sumariamente de empleo y de sueldo— era el momento razonable a partir del cual comezaba a correr el término de ciento veinte (120) días para ejercer su autoridad disciplinaria. En vista de que, según el tribunal, el Superintendente no solicitó oportunamente las prórrogas que concede la ley, concluyó que las expulsiones se decretaron sin jurisdicción. Rechazó, además, que las suspensiones sumarias de 21 de febrero de 1985 interrumpieran dicho término pues, según entendió el tribunal, la suspensión sumaria temporera, impuesta mientras se investiga un caso, no es una medida disciplinaria sino más bien una medida preventiva.

De dicha sentencia recurrió ante nos el Superintendente y planteó lo siguiente:

> ... erró el Honorable Tribunal de instancia al dejar sin efecto la Resolución dictada ... por la CIPA que confirma la actuación del Superintendente de la Policía expulsando a los recurridos, por

alegadamente haber actuado sin jurisdicción al imponer la medida disciplinaria en cuestión. Petición de *certiorari*, pág. 7.

Sometido el presente recurso, estamos en posición de resolver.

## II

■ La Ley Núm. 32, *supra*, creó la Comisión de Investigación, Procesamiento y Apelación.(⁵) Facultada con poderes cuasijudiciales, la C.I.P.A. puede entender en casos en que se impute mal uso o abuso de autoridad(⁶) a cualquier funcionario del orden público, agente de rentas inter-

---

(⁵) En cuanto a las razones que motivaron la creación de cuerpos como la Comisión de Investigación, Procesamiento y Apelación (en adelante la C.I.P.A.), véase *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334, 339 (1986).

(⁶) Entre los actos que constituyen mal uso o abuso de autoridad, la ley enumera los siguientes:

"(a) arrestos o detenciones ilegales o irrazonables;

"(b) registros, allanamientos e incautaciones ilegales o irrazonables;

"(c) acometimiento y/o agresión injustificados o excesivos;

"(d) discrimen por razones políticas, religiosas, condición socioeconómica, o cualesquiera otras razones no aplicables a todas las personas en general;

"(e) dilación indebida en conducir ante un magistrado a una persona arrestada o detenida;

"(f) uso de violencia injustificada, coacción física o psicológica, intimidación o prolongación indebida, sobre o de una persona arrestada, o detenida para fines de investigación;

"(g) negativa del funcionario para permitir que un arrestado o detenido involuntariamente, se comunique con su familiar más cercano o abogado;

"(h) interceptación, grabación o cualesquiera otras transgresiones mediante artefactos físicos, químicos o electrónicos, de las comunicaciones privadas;

"(i) incitar a una persona para la comisión de un delito en los casos que de no mediar esa incitación ésta no lo hubiere cometido o intentado realizar;

"(j) persecución maliciosa;

"(k) calumnia, libelo o difamación;

"(l) falsa representación o impostura;

"(m) utilización de evidencia falsa que vincule a una persona con la comisión de un delito o;

"(n) iniciar y continuar una vigilancia o investigación ostensible, notoria e intensa sobre una persona, cuando por razón de estas características pierde toda efectividad como mecanismo prudente y discreto de investigación policíaca;

"(o) obstruir, impedir o interrumpir ilegal o irrazonablemente el ejercicio legal y pacífico de las libertades de palabra, prensa, reunión y asociación, y de libertad de petición en las vías o lugares públicos." 1 L.P.R.A. sec. 172(1).

nas o cualquier otro de la Rama Ejecutiva autorizado a realizar arrestos.([7])

■■■ Las funciones que la ley le asigna a la C.I.P.A. las puede ejercer en primera instancia (1 L.P.R.A. sec. 172(1)) o en apelación (1 L.P.R.A. sec. 172(2)). Como cuerpo apelativo, la C.I.P.A. revisa las actuaciones disciplinarias que realizan los jefes o directores sobre los funcionarios comprendidos por la ley. 1 L.P.R.A. sec. 172(2).([8]) Además, la C.I.P.A. puede entender en apelaciones presentadas por cualquier ciudadano que no esté conforme con la determinación de dicho jefe o director. 1 L.P.R.A. sec. 172(2).

■■■ En cuanto a su facultad en primera instancia, la C.I.P.A. puede investigar e iniciar cualquier procedimiento encaminado a imponer medidas disciplinarias, formulando cargos específicos contra el funcionario público que haya incurrido en conducta cubierta por la Ley Núm. 32, *supra*. 1 L.P.R.A. sec. 172(1). La C.I.P.A. podrá ejercer estas funciones por iniciativa propia, a instancias del Gobernador

---

([7]) En *Pueblo v. Velazco Bracero*, 128 D.P.R. 180, 189 (1991), dijimos que entre los funcionarios facultados para hacer arrestos se encuentran:

"... los guardias municipales, 21 L.P.R.A. sec. 1063; los agentes investigadores del Negociado de Investigaciones Especiales del Departamento de Justicia, 3 L.P.R.A. sec. 138(d); los oficiales de custodia de la Administración de Corrección, 4 L.P.R.A. sec. 1126; el Secretario de Salud, inspectores médicos y oficiales de salud a cargo de implantar la Ley de Sanidad, 3 L.P.R.A. sec. 186; el cuerpo de Vigilantes del Departamento de Recursos Naturales, 12 L.P.R.A. sec. 1205; el Director Ejecutivo de la Autoridad de los Puertos y cualquier empleado de la Autoridad de los Puertos designado por aquél para vigilar los aeropuertos, 23 L.P.R.A. sec. 465."

([8]) La aprobación de la Ley de Personal del Servicio Público en 1975 produjo confusión sobre la facultad apelativa de la C.I.P.A., pues dicha ley creó la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) y le concedió autoridad para atender apelaciones de las decisiones de gerencia de personal de los administradores individuales del sistema público, entre ellos la Policía de Puerto Rico. Por ello, para evitar conflictos jurisdiccionales entre estos dos (2) organismos, la Asamblea Legislativa enmedó recientemente la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 171 *et seq.*, para aclarar que la C.I.P.A. tiene jurisdicción apelativa *exclusiva* sobre toda sanción impuesta por la autoridad nominadora como resultado de una imputación de mal uso o abuso de autoridad y sobre toda medida disciplinaria impuesta debido a la comisión de faltas leves o graves al Reglamento de la Policía de Puerto Rico. Ley Núm. 23 de 16 de julio de 1992 (1 L.P.R.A. secs. 172 y 173).

de Puerto Rico o a solicitud de algún ciudadano, y sólo cuando la autoridad facultada para disciplinar al funcionario no haya actuado o le haya exonerado. Íd. Además, podrá intervenir a instancia de la autoridad facultada para sancionar cuando esta última pierde jurisdicción en aquellos casos en que aplican los términos que la ley le concede al jefe o director para que actúe. Íd. De lo anterior surge que el objetivo de conceder dichos poderes a un organismo como la C.I.P.A. es mantener un foro alterno e independiente para casos en que la agencia cubierta por la ley no haya tomado acción contra el funcionario o le haya exonerado.

En el caso ante nuestra consideración, la controversia gira en torno a si el Superintendente de la Policía actuó con jurisdicción al expulsar de ese Cuerpo a los agentes recurridos. Ambas partes fundamentan su argumento en la interpretación que hacen del Art. 2 de la Ley Orgánica de la C.I.P.A., 1 L.P.R.A. sec. 172(1). Dicha disposición, en parte, establece lo siguiente:

A los fines de lo dispuesto en el primer párrafo de esta sección, se entenderá que la autoridad facultada para sancionar a un funcionario público no lo ha sancionado, si dicha autoridad afirmativamente determina que exonera al funcionario en cuestión, o si, *luego de formulada una queja o querella contra un funcionario público, o de ocurridos los hechos que pudieran dar lugar a tal queja o querella, transcurren ciento veinte (120) días sin que la autoridad facultada para sancionar imponga medidas disciplinarias* o exonere al funcionario público en cuestión. *Transcurridos los referidos ciento veinte (120) días, la facultad para sancionar al funcionario en cuestión será, exclusivamente, de la Comisión.* Sin embargo, a solicitud de la autoridad facultada para sancionar, la Comisión concederá prórrogas adicionales por términos de treinta (30) días cada una, siempre que dichas prórrogas se soliciten antes de expirar el término original de ciento veinte (120) días, o de la prórroga que se hubiere concedido, y se establezca que existe razón justificada para ello. Disponiéndose que el referido término de ciento veinte (120)

días aplica exclusivamente a casos donde ha habido mal uso o abuso de autoridad. (Énfasis suplido.) 1 L.P.R.A. sec. 172(1).

Según las partes, la controversia se limita a determinar cuándo comenzó a transcurrir el término de ciento veinte (120) días que provee la ley para que la autoridad tome medidas disciplinarias contra el funcionario. El Superintendente alega, en síntesis, que el término comenzó a correr el 9 de abril de 1985, fecha en que recibió del N.I.E. el expediente de investigación y que, por lo tanto, todas las prórrogas —seis (6) en total— fueron solicitadas dentro del término que dispone la ley. Argumenta el Superintendente que le era imposible comezar su investigación sin el expediente que había preparado el N.I.E. En segundo lugar, el Superintendente alega que, independientemente del argumento anterior, la suspensión sumaria que ordenó el 21 de febrero de 1985 "mientras se ivestigaba el caso" tuvo el efecto de interrumpir el término de ciento veinte (120) días.

Por su parte, los recurridos alegan que los ciento veinte (120) días comenzaron a correr el 21 de febrero de 1985, fecha en que se presentaron las denuncias en su contra y fueron suspendidos sumariamente por el Superintendente. Entonces, según ellos, ya para el 12 de julio de 1985, cuando el Superintendente solicita la primera prórroga, el término había transcurrido y el Superintendente había perdido autoridad sobre el caso.

Aunque por otros fundamentos no expuestos en su escrito, el recurrente tiene razón. Procede revocar.

## III

La Ley Núm. 22 de 15 de abril de 1976 enmendó los incisos (1) y (2) del Art. 2 de la Ley Orgánica de la C.I.P.A., *supra*. En cuanto al inciso (1), la enmienda aportó dos (2)

cambios importantes que arrojan luz sobre la controversia en este caso.(⁹) En primer lugar, dispuso que, además de la propia comisión, el Gobernador y los ciudadanos, la C.I.P.A. puede actuar en primera instancia "por referimiento de la autoridad con facultad para sancionar cuando ésta pierde jurisdicción *en aquellos casos en que aplican los términos indicados en este Capítulo ...*". (Énfasis suplido.) Art. 2 de la Ley Orgánica de la C.I.P.A., según enmendada por la Ley Núm. 22, *supra*. De esta añadidura surge claramente que el término de ciento veinte (120) días que la ley concede a la autoridad para que imponga medidas disciplinarias *no opera en todo caso.*

Ello conduce al segundo cambio importante que la enmienda de 1976 introdujo al inciso (1), al añadir la última oración que lee como sigue: "Disponiéndose que el referido término de ciento veinte (120) días *aplica exclusivamente a casos donde ha habido mal uso o abuso de autoridad.*" (Énfasis suplido.) Art. 2(1) de la Ley Núm. 22, *supra*, 1 L.P.R.A. sec. 172(1), que enmendó la Ley Orgánica de la C.I.P.A.

Si el término de ciento veinte (120) días aplica sólo a casos en los que ha habido "mal uso o abuso de autoridad" (Art. 1(1) de la Ley Núm. 22, *supra*), ¿cuáles son los otros casos en que no opera dicho término? Después de todo, la C.I.P.A. se creó para entender "[e]n caso de que se impute mal uso o abuso de autoridad ...". 1 L.P.R.A. sec. 172(1). Aunque las considera, la enmienda no señala cuáles son esas otras situaciones que no están limitadas por el término de ciento veinte (120) días.

---

(⁹) Además de los cambios que discutimos en el texto de esta opinión, la enmienda de 1976 amplió a ciento veinte (120) días el término dentro del cual la autoridad facultada para sancionar debe imponer las medidas disciplinarias antes de perder jurisdicción sobre el caso. La ley original concedía sólo sesenta (60) días. Además, la enmienda autorizó a la C.I.P.A. a conceder prórrogas subsiguientes de treinta (30) días cada una, siempre que se soliciten dentro del término de ciento veinte (120) días o de la prórroga que se hubiese concedido. La ley orgánica sólo autorizaba una prórroga de treinta (30) días.

■ La ley no está clara. Por lo tanto, estamos compelidos a recurrir al historial en busca de la intención del legislador para así comprender el alcance de la medida y hacer cumplir su espíritu. Art. 19 del Código Civil, 31 L.P.R.A. sec. 19; *Román v. Superintendente de la Policía*, 93 D.P.R. 685, 688 (1966); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968); *Rodríguez v. Fidelity Bond Mortg. Corp.*, 108 D.P.R. 156, 158 (1978); *Pueblo v. Hernández Maldonado*, 129 D.P.R. 472 (1991), y casos allí citados. *Cf.* Art. 14 del Código Civil, 31 L.P.R.A. sec. 14.

Al acudir al historial legislativo de la enmienda de 1976 nos encontramos con que el legislador quiso ofrecer tratamientos distintos a dos (2) tipos de situaciones en que se hayan impuesto medidas disciplinarias: de una parte, cuando se haya imputado mal uso o abuso de autoridad a cualquier funcionario cubierto por la ley y, de otra parte, cuando se hayan imputado "faltas leves o graves" *contra miembros de la Policía*. Así, en su informe en el cual se explica el alcance de la enmienda de 1976, la Comisión de Gobierno del Senado señaló lo siguiente:

> La enmienda también es al efecto de aclarar que el término ... de ciento veinte (120) días *se refiere y aplica solamente a casos de mal uso de autoridad y no a los casos en que se toma acción disciplinaria por faltas leves o graves contra miembros de la Policía.* (Énfasis suplido.) Informe de la Comisión de Gobierno del Senado sobre el P. del S. 717 de 16 de mayo de 1974, que luego se convirtió en la Ley Núm. 22, *supra*.

La propia Comisión de Gobierno del Senado, en un informe posterior, explica la razón por la cual entendieron que era prudente excluir del término de ciento veinte (120) días a aquellos casos en que se imputen "faltas leves o graves" contra miembros de la Policía:

> El número de querellas contra los miembros de la Policía ha aumentado en forma considerable y esto ha significado que el personal dedicado a la labor investigativa resulte insuficiente y por lo tanto, no se pueda cumplir con las disposiciones de la Ley

dentro del término que prescribe [la Ley Núm. 32 previo a la enmienda de 1976]. Informe de la Comisión de Gobierno del Senado sobre el P. del S. 717 de febrero de 1976, que luego se convirtió en la Ley Núm. 22, *supra*.

■ De lo anterior surge que, en cuanto al término para que actúe la autoridad con facultad para sancionar, la Ley Orgánica de la C.I.P.A., según enmendada por la Ley Núm. 22, *supra*, trata los casos de mal uso o abuso de autoridad por parte de ciertos funcionarios públicos *de forma distinta* a aquellos en los que dichas faltas son cometidas por los *agentes de la Policía*.([10])

■ Resolvemos, pues, que a la luz del historial legislativo del estatuto que enmendó la Ley Orgánica de la C.I.P.A., el Superintendente, al tomar medidas disciplina-

---

([10]) De hecho, el propio estatuto —antes y después de la enmienda que aportó la Ley Núm. 23 de 16 de julio de 1992, *supra*, véase el esc. 8 de esta opinión— en la parte que regula la facultad apelativa de la C.I.P.A., distingue entre "faltas leves y graves" en cuanto a miembros de la Policía y casos de mal uso o abuso de autoridad cometidos por otros funcionarios públicos. El inciso (2) del Art. 2, según enmendado, 1 L.P.R.A. sec. 172(2), dispone que:

"[La C.I.P.A. a]ctuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por este Capítulo, cuando el jefe o director del organismo o dependencia de que se trate les haya impuesto cualquier medida disciplinaria en relación con actuaciones *cubiertas por este Capítulo, o con faltas leves en que se haya impuesto una reprimenda o suspensión de empleo y sueldo o faltas graves en el caso de miembros de la Policía ....*" (Énfasis suplido.)

Más aún, la reciente enmienda al Art. 3 de la Ley Orgánica de la C.I.P.A., 1 L.P.R.A. sec. 173, también en torno a su facultad apelativa, separa con más claridad, de un lado, aquellos casos que surgen como resultado de "faltas leves y graves" en cuanto a miembros de la Policía, y de otro, aquellos que son consecuencia del mal uso o abuso de autoridad. Dispone en parte dicha enmienda que:

"La Comisión tendrá jurisdicción exclusiva para actuar como cuerpo apelativo en los casos que se especifican a continuación:

"(1) En casos donde la autoridad nominadora o su representante autorizado haya impuesto cualquier medida o sanción disciplinaria a un funcionario o empleado de la Rama Ejecutiva autorizado para efectuar arrestos, *en relación con actuaciones donde se le imputa mal uso o abuso de autoridad según lo define el inciso (1) de la sec. 172 de este título*; y

"(2) *En casos donde el Superintendente de la Policía o su representante autorizado haya impuesto cualquier medida o sanción disciplinaria a un miembro de la Policía en relación a la comisión de faltas leves o faltas graves según disponen las secs. 1001 et seq. del Título 25 [de la Policía de Puerto Rico de 1974] y su reglamento.*" (Énfasis suplido.)

rias contra *miembros de la Policía* no está limitado por el término de ciento veinte (120) días que provee dicha ley. El término de ciento veinte (120) días aplica sólo a casos en los que ha habido mal uso o abuso de autoridad por parte *de otros funcionarios del orden público*, agentes de Rentas Internas u otros funcionarios de la Rama Ejecutiva autorizados para realizar arrestos, según dispone la ley.

■ Lo aquí resuelto no significa que el Superintendente, una vez tenga conocimiento de los hechos constitutivos de una falta que conlleve acción disciplinaria según el Reglamento de la Policía, se cruce de brazos y no disponga del asunto con prontitud. La propia ley de la Policía y su reglamento le imponen la obligación de actuar con premura. Por ejemplo, cuando, como en el presente caso, el Superintendente suspende temporalmente de empleo y de sueldo a algún miembro de ese Cuerpo, el Art. 14 de la Ley de la Policía de Puerto Rico le ordena "que se formulen los correspondientes cargos, *sin demora innecesaria. Investigará y resolverá tales casos a la mayor brevedad posible* ...". (Énfasis suplido.) Art. 14 de la Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. sec. 1014(e). Por su parte, el Reglamento de Personal de la Policía dispone que:

> En todo caso que surja la posibilidad de aplicación de medidas disciplinarias por violación a cualquier falta cuya sanción pudiera resultar en la suspensión de empleo y sueldo, destitución o expulsión o degradación ... [e]*l Superintendente iniciará una investigación administrativa dentro de los diez (10) días laborables desde que tuvo conocimiento oficial de los hechos o de la radicación de una querella.* (Énfasis suplido.) Sec. 14.3(2)(b)(1)(a) del Reglamento de la Policía de Puerto Rico, 4 de mayo de 1981.[11]

---

[11] Sobre si dicho término de diez (10) días es directivo o mandatorio y jurisdiccional, *quaere. Cf.* Op. Sec. Just. Núm. 1986-23.

Es importante señalar que el Superintendente está impedido de iniciar su propia investigación mientras el Negociado de Investigaciones Especiales esté investi-

Lo aquí resuelto tampoco menoscaba las facultades de la C.I.P.A. para actuar en primera instancia cuando de miembros de la Policía se trata. Por ejemplo, si el Superintendente exonera a uno de éstos, la C.I.P.A. podrá entonces investigar y procesar al funcionario siempre que cumpla con las disposiciones de ley. 1 L.P.R.A. sec. 172(1). Como cuerpo apelativo, podrá revisar las actuaciones disciplinarias del Superintendente en relación con faltas graves o aquellas faltas leves en que se haya impuesto la suspensión de empleo y sueldo, según dispone la propia ley. 1 L.P.R.A. sec. 172(2).

## IV

Aunque aceptamos que la Ley Orgánica de la C.I.P.A., según fue enmendada, no está clara, el historial legislativo de la medida que la enmendó revela el indudable propósito de que el término de ciento veinte (120) días no aplicaría a casos en que estén implicadas faltas contra miembros de la Policía. Tanto las partes como el tribunal a quo no auscultaron la intención de dicha enmienda, según surgía de su historial. Nuestra obligación ineludible es hacer cumplir dicha intención. *A.R.Pe. v. Rodríguez*, 127 D.P.R. 793 (1991); *Pueblo v. Hernández Maldonado*, supra.

Por los fundamentos antes expuestos, *se dictará sentencia para revocar aquella dictada el 12 de septiembre de 1989 por el Tribunal Superior, Sala de San Juan, y se ordena la devolución de los autos originales para que continúen los procedimientos en instancia conforme a lo aquí resuelto.*

El Juez Asociado Señor Rebollo López se inhibió.

---

gando el caso. Véase Art. 4(15) de la Ley Núm. 38 de 13 de julio de 1978 (3 L.P.R.A. sec. 138c(15)).