Cordero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 29 de marzo de 2000, el Departamento de Justicia ("Departamento") solicitó la revisión de una resolución interlocutoria de la Comisión de Investigación, Procesamiento y Apelación ("CIPA"), emitida el 9 de diciembre de 1999, y archivada en autos copia de su notificación el 15 de marzo de 2000. Mediante dicha resolución, la CIPA declaró no ha lugar la solicitud de reconsideración presentada por el Departamento. Por los fundamentos que expondremos, expedimos el auto de revisión administrativa solicitado y confirmamos la determinación de la CIPA.
I
El 9 de noviembre de 1998, Claribel Rivera Jiménez ("Rivera") fue notificada de la intención de destituirla de su puesto de Agente Especial II del Negociado de Investigaciones Especiales del Departamento de Justicia ("NIE"). Luego de celebrarse una vista informal, el entonces Secretario de Justicia, Ledo. José M. Fuentes Agostini, notificó a Rivera su destitución como Agente Especial II del NEE. El Secretario de Justicia fundamentó su determinación en el Informe del Oficial Examinador que presidió la vista, el cual concluye que Rivera incurrió en conducta impropia que resultaba contraria a varias normas disciplinarias contenidas en la Orden Administrativa Núm. 94-10. Rivera fue advertida de su derecho de acudir en apelación ante la Junta de Apelaciones del Sistema de Administración, de Personal (" JASAP") en el plazo jurisdiccional de treinta (30) días.
En su lugar, el 10 de mayo de 1999, Rivera presentó apelación ante la CIPA solicitando la reinstalación en sus funciones como Agente Especial II del NIE. Luego de varios trámites procesales, el 24 de agosto de 1999, el Departamento presentó "Moción de Desestimación por Falta de Jurisdicción" en la cual planteó la falta de jurisdicción de la CIPA sobre el caso de Rivera. Fundamentó la misma en que la medida disciplinaria impuesta no está contemplada como una determinación apelable ante la CIPA, conforme la ley que creó este organismo, Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sección 171 y siguientes. El 2 de septiembre de 1999, archivada el 10 de septiembre de 1999, la CIPA emitió resolución declarando no ha lugar la moción de desestimación presentada por el Departamento. El 29 de septiembre de 1999, el Departamento presentó solicitud de reconsideración. La CEPA acogió la misma el 13 de octubre de 1999 mediante orden notificada el 14 de *804 octubre de 1999. Mediante dicha orden, la CIPA también citó a las partes a una vista administrativa. Celebrada la vista, el 9 de diciembre de 1999, notificada el 15 de marzo de 2000, la CIPA emitió resolución declarando no ha lugar la moción de reconsideración presentada por el Departamento. Mediante la misma, la CIPA resolvió que tenía jurisdicción para resolver la controversia sobre el despido de una ex-agente del NIE. Inconforme, el Departamento, el 29 de marzo de 2000, presentó ante este Foro solicitud de revisión administrativa. En la misma señaló como único error que incidió la CIPA al concluir que tiene jurisdicción para dilucidar el despido de una ex-agente del NIE, ya que la adjudicación de esta controversia, desde un principio, le correspondía a JASAP.
El 3 de mayo de 2000, emitimos resolución interlocutoria en la cual ordenamos a la parte recurrida mostrar causa por la cual el caso de epígrafe no debía trasladarse a JASAP. El 23 de mayo de 2000, la CIPA presentó solicitud de intervención. Rivera compareció el 26 de mayo de 2000. El 8 de septiembre de 2000, la CIPA presentó escrito titulado "Moción de Desestimación y en Cumplimiento de Orden para Mostrar Causa". Nos encontramos en posición de resolver la controversia planteada.
II
En primer lugar, es preciso discutir la jurisdicción de este Tribunal para revisar una resolución interlocutoria de una agencia administrativa, como la que tenemos en el caso de autos.
En su decisión, en Junta Examinadora de Tecnólogos Médicos v. Anneris Elias y Otros, 97 J.T.S. 141, a la pág. 320, el Tribunal Supremo resolvió que la revisión judicial de decisiones administrativas está limitada a las órdenes o resoluciones finales de dichos organismos. Sin embargo, el tribunal señala que una decisión administrativa interlocutoria o parcial es susceptible de revisión judicial cuando se trata de una actuación ultra vires, o de un caso donde se debe aclarar la existencia de la jurisdicción, Id, a la página 321.
En el presente caso, el Departamento impugna una actuación interlocutoria de la CIPA; la resolución en que dicha agencia determina que tiene la capacidad para adjudicar una controversia sobre la destitución de un agente del NIE. No obstante lo anterior, al aplicar la norma establecida por el Tribunal Supremo en Junta Examinadora de Tecnólogos Médicos v. Anneris Elias y Otros, supra, concluimos que la misma es revisable. Véase, además, Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 2000 J.T.S. 98, nota al calce 3, a las pág. 1271-1272.
El planteamiento del Departamento es que no está entre los poderes que le confirió la ley orgánica de la CIPA el adjudicar apelaciones relacionadas con la destitución de un agente del NIE. Por tanto, estamos ante el argumento de que la CIPA actuaría de forma ultra vires y sin jurisdicción. Por ser ésta una cuestión estrictamente de derecho, procede la revisión judicial de la misma. Id.
III
La CIPA fue creada por virtud de la Ley Núm. 32 de 22 de mayo de 1972 (Ley Núm. 32), según enmendada, 1 L.P.R.A. sección 171 y siguientes, con el fin de establecer un foro exclusivo para apelar los casos en que se haya imputado mal uso o abuso de autoridad a cualquier empleado de la Rama Ejecutiva autorizado para realizar arrestos. Arocho Hernández v. Policía de Puerto Rico, 98 J.T.S. 7, a la pág. 507. Sin embargo, la posterior aprobación de la Ley de Personal del Servicio Público, que a su vez creó la Junta de Apelaciones del Sistema de Administración de Personal (JASAP), Ley Núm. 5 del 14 de octubre de 1975, 3 L.P.R.A. sección 1301 y siguientes, otorgó facultad a este organismo para entender y adjudicar controversias relacionadas con las decisiones de gerencia de personal de los Administradores Individuales. Como resultado, se creó un conflicto jurisdiccional entre ambas agencias, por lo que se aprobó la Ley Núm. 23 del 16 de julio de 1992,1 L.P.R.A. see. 172. Esta ley enmendó la ley orgánica que creó la CIPA y clarificó la jurisdicción de ambos organismos. Exposición de Motivos, Ley Núm. 23 de 16 de julio de 1992 (Ley Núm. 23).
Por virtud de la Ley Núm. 23, fue reconocida la jurisdicción apelativa exclusiva de la CIPA sobre toda sanción impuesta por la nominadora en respuesta a una imputación de mal uso o abuso de poder y sobre toda *805 medida disciplinaria impuesta en relación con la comisión de faltas leves o graves al Reglamento de la Policía o de otras agencias que tengan reglamentación similar. Artículo 2, inciso 2 de la Ley Núm. 23, 1 L.P.R.A. see. 172 (2).
Así, la CIPA puede entender, en primera instancia, en casos en los que se impute mal uso o abuso de autoridad a cualquier funcionario del orden público, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos, si la autoridad facultada para sancionar a dicho funcionario público no lo ha sancionado. A solicitud del Gobernador, motu propio o a instancia de algún ciudadano o porque la autoridad con facultad para sancionar así lo refiera cuando ésta pierda jurisdicción, la CIPA puede investigar e iniciar cualquier procedimiento encaminado a imponer medidas disciplinarias, formulando cargos específicos contra el funcionario público que haya incurrido en conducta cubierta bajo la Ley Núm. 32, 1 L.P.R.A. see. 172 (1); Ortiz Ruiz v. Superintendente de la Policía, 132 D.P.R. 432, 439-440 (1993).
En cuanto a la función apelativa de la CIPA, la Ley Núm. 23 establece que esta agencia actuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la ley, cuando el jefe o director del organismo o dependencia de la que se trate, les haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por la ley, o faltas graves en el caso de miembros de la Policía o de otras agencias que tengan reglamentación similar. Sección 1 de la Ley Núm. 23. Específicamente, la CIPA tendrá jurisdicción exclusiva para actuar como cuerpo apelativo: (1) en casos donde la autoridad nominadora haya impuesto cualquier medida o sanción disciplinaria a un funcionario o empleado de la Rama Ejecutiva autorizado para efectuar arrestos, en relación con actuaciones donde se le imputa mal uso o abuso de autoridad, y (2) en casos donde la Policía o el oficial correspondiente de cualquier otra organización que con reglamentación similar haya impuesto cualquier medida o sanción disciplinaria a un miembro de la Policía en relación con la comisión de faltas leves o faltas graves a su reglamento. Todos los demás casos, incluyendo las separaciones en período probatorio, cesantías, traslados y aquellos relacionados con áreas esenciales al principio de mérito, se ventilarán ante JASAP, quien tendrá jurisdicción primaria. Sección 2 de la Ley Núm. 23.
Resulta, entonces, que la CIPA tiene jurisdicción apelativa exclusiva para resolver asuntos relacionados con medidas disciplinarias impuestas por mal uso o abuso de autoridad de cualquier funcionario del orden público, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado para realizar arrestos. Sin embargo, la CIPA no está facultada en ley para entender en asuntos no relacionados con otras áreas esenciales al principio de mérito que correspondan a la jurisdicción primaria de JASAP, tales como los traslados, aumentos salariales, ascensos, nombramientos y cambios, reclasificaciones y otros. 1 L.P.R.A. see. 173.
Por otro lado, el Tribunal Supremo ha señalado que al interpretar el alcance de los poderes delegados a una agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva del estatuto habilitador. Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756, 765-766 (1997). Nos dice el Tribunal, citando el caso de Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 749 (1992), lo siguiente:

"[...] Es por eso que el análisis de una ley debe hacerse teniendo en mente los fines que ésta persigue y de forma tal que la ley se ajuste a la política pública que la inspira. En el proceso de interpretación, no debemos desvincularla del problema cuya solución persigue, pues tenemos 'el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos'...".

Añade dicho Tribunal en Chase Manhattan Bank v. Municipio de San Juan, 126 D.P.R. 759, 766 (1990), que al interpretar una disposición especifica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y su determinación debe atribuirle un sentido que asegure el resultado que originalmente quiso ser obtenido. A tal respecto, la intención legislativa es clara en cuanto se refiere y delega a la CIPA tal jurisdicción revisora sobre toda determinación de las agencias concernidas que llevan a cabo funciones de orden y seguridad intema. Véase, además, 25 L.P.R.A. § 3122, Supl. 2000. Es preciso añadir lo que dispone la jurisprudencia en cuanto a la revisión por parte de los tribunales de las conclusiones de derecho de las agencias administrativas.
*806 Es norma reiterada que las determinaciones de derecho de las agencias administrativas, contrario a las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal "sin sujeción a norma o criterio alguno", PRTC v. Junta, supra, a la pág. 1266; 3 L.P.R.A. see. 2175. Sin embargo, esto no significa que los tribunales, al ejercer su función revisora, pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Esta deferencia a sus conclusiones de derecho, les será otorgada a las agencias, siempre y cuando las mismas estén sujetas al mandato de la ley. No obstante, en casos donde hay duda, la interpretación de un estatuto por la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando dicha interpretación no sea la única razonable. PRTC v. Junta, supra, a las págs. 1266-1267; De Jesús v. Departamento de Servicios Sociales, 123 D.P.R. 407, 418 (1989).
Dicha interpretación, nos dice el Tribunal Supremo, tiene qué estar ajustada al fundamento racional o fin esencial de la ley y la política pública que la inspiran. PRTC v. Junta, supra, a la pág. 1267.
IV
En el caso ante nuestra consideración, el Departamento alegó que la CIPA no tenía la facultad de entender y adjudicar la controversia sobre el despido de una agente del NIE, ya que la misma no surge de la Ley Núm. 23. No obstante, al tomar en consideración los principios de interpretación de las leyes y de revisión administrativa antes mencionados, junto con las disposiciones de la Ley Núm. 23 y su Exposición de Motivos, así como lo dispuesto en 25 L.P.R.A. § 3122, supra, concluimos que no le asiste razón al Departamento.
AI interpretar la referida ley a la luz de los propósitos que ésta persigue, junto con los poderes conferidos por el legislador a la CIPA, entendemos que de dicha ley puede ser inferida la facultad para adjudicar controversias comp la del caso de autos, tal y como fue interpretado por la CIPA.
Además, de la interpretación de dicha ley surge que la CIPA es quien posee jurisdicción apelativa exclusiva para adjudicar la controversia sobre la destitución de un agente del NIE. Rivera, como agente del NIE, era un funcionario autorizado para efectuar arrestos. 3 L.P.R.A. sec. 138(d). Como expresáramos anteriormente, y según expresamente dice la exposición de motivos de la Ley 23, la CIPA posee jurisdicción apelativa exclusiva sobre toda sanción impuesta por la autoridad nominadora a un funcionario autorizado para efectuar arrestos en relación con una imputación de mal uso o abuso de poder y sobre toda medida disciplinaria impuesta en relación con comisión de faltas leves o graves al Reglamento de la Policía o de otras agencias que tengan reglamentación similar.
El Reglamento General del Negociado de Investigaciones Especiales del Departamento de Justicia recoge las medidas disciplinaria que podrían imponerse a sus agentes por conducta constitutiva de falta. Las faltas allí contempladas no están clasificadas en graves o leves, pero la comisión de alguna de ellas puede culminar en una suspensión de empleo y sueldo por un término no mayor de tres meses o en la destitución del empleado. Página 23 del Reglamento General del Negociado de Investigaciones Especiales del Departamento de Justicia. Particularmente, la Regla 9 de dicho reglamento indica que violar las normas o procedimientos intemos del NIE que se adopten según lo autoriza el Reglamento, constituye una falta sujeta a sanción. Páginas 25-26 del Reglamento General del Negociado de Investigaciones Especiales del Departamento de Justicia. La Orden Administrativa Núm. 94-10 del Departamento de Justicia establece varias normas intemas de conducta donde una violación a éstas constituye una falta que conlleva la imposición de acciones correctivas y medidas disciplinarias, tales como una reprimenda escrita, suspensión de empleo y sueldo, destitución del empleo o separación del puesto. Rivera desplegó una conducta impropia contraria a la Orden Administrativa Núm. 94-10 del Departamento de Justicia. Particularmente, a Rivera se le imputó insubordinación, uso de lenguaje amenazante o actos de igual naturaleza, falta de cumplimiento de las normas establecidas y hacer aseveraciones falsas, viciosas o maliciosas contra la agencia, sus funciones o empleados. Esta conducta corresponde a las faltas graves número 9, 14 y 22 del Reglamento de Personal de la Policía de Puerto Rico, Artículo 14 Sección 14.5. Por lo que resulta meridianamente claro que existe similitud entre la reglamentación de la Policía y la reglamentación del NIE. 
Reconocemos que las actuaciones por las cuales fue destituida Rivera, no tienen ninguna relación con el mal *807 uso o abuso de autoridad, según ésta se define en la ley orgánica de la CIPA. Sin embargo, las normas de conducta de las cuales se apartó Rivera, ciertamente son similares con las normas contenidas en el Reglamento de la Policía. Aunque el NIE está adscrito al Departamento de Justicia y no a la Policía, Rivera está autorizada a efectuar arrestos y ciertamente estamos ante un organismo con "reglamentación similar", sobre el cual la enmienda del 1992 confiere jurisdicción a la CIPA. Por lo que las apelaciones sobre medidas disciplinarias impuestas, en relación con la comisión de faltas a su reglamento, son de la exclusiva jurisdicción de la CIPA.
La enmienda de 1992 delegó en la CIPA todo lo concerniente a la revisión de decisiones de agencias que tuvieran una reglamentación disciplinaria para sus funcionarios con poder para efectuar arrestos. El propósito fue extender su facultad revisora a otras agencias en la esfera disciplinaria, sin limitarlo a cuestiones de mal uso o abuso de poder. Tan es así, que la propia ley reconoce la facultad revisora de JASAP en todos los demás casos relacionados con áreas esenciales al principio de mérito.
Aunque la destitución o expulsión de un empleado está relacionado con retención, que es un área esencial del principio de mérito, 3 L.P.R.A. sección 1394, en el caso que nos ocupa, la destitución o expulsión tiene su génesis en un proceso en que se tomaron medidas disciplinarias por faltas al reglamento cometidas por un funcionario con poder para realizar arrestos. Corresponde a la CIPA, y no a JASAP, entender esta controversia. Véase Arroyo v. Policía de Puerto Rico, 97 J.T.S. 73, a la pág. 1074.
V
Por los fundamentos anteriormente expuestos, expedimos el auto solicitado y confirmamos la resolución emitida por la CIPA.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 32
1. Específicamente, se le informó a Rivera que violó las siguientes normas de la Orden Administrativa Núm. 94-10:

"16. Realizar actos o usar lenguaje amenazante, irrespetuoso, insolente, indecente u obsceno (verbal o escrito) contra sus supervisores, compañeros de trabajo o ciudadanos.

23. Insubordinación. Negarse a acatar órdenes e instrucciones de su supervisor, compatibles con los deberes y obligaciones del empleado y con las junciones de la unidad de trabajo.

27. No cumplir con las normas establecidas mediante ley, reglamentos, y órdenes administrativas que rigen la agencia.

43. Hacer aseveraciones falsas, viciosas o maliciosas contra la agencia, sus funciones o empleados."

2. La Ley del Negociado de Investigaciones Especiales del Departamento de Justicia, Ley Núm. 38 del 13 de julio de 1978, según enmendada, dispone que el NIE constituirá un administrador individual para efectos de la Ley de Personal del Servicio Público. 3 L.P.R.A. sección 138(a).
3. La sección 172 establece que se entenderá que ha habido mal uso o abuso de autoridad cuando cualquier funcionario cubierto por ésta, incurra en los siguientes actos, entre otros:

"(a) arrestos o detenciones ilegales o irrazonables;

(b) registros, allanamientos e incautaciones ilegales o irrazonables;

*808
(c) acometimiento y/o agresión injustificados o excesivos;

(d) discrimen;

(e) dilación indebida en llevar ante un magistrado a una persona arrestada o detenida;

(f) uso de violencia injustificada, coacción física o sicológica, intimidación o prolongación indebida sobre una persona arrestada o detenida para fines de investigación;

(g) negativa del funcionario para permitir que un arrestado o detenido se comunique con su familiar más cercano o un abogado;

(h) interceptación, grabación o cualesquiera otras transgresiones mediante artefactos físicos, químicos o electrónicos, de las comunicaciones privadas;

(i) incitar a una persona para la comisión de un delito;

(j) persecución maliciosa;

(k) calumnia, libelo o difamación;

(l) falsa representación o impostura;

(m) utilización de evidencia falsa que vincule a una persona con la comisión de un delito;

(n) iniciar y continuar una investigación intensa sobre la persona, cuando por razón de esto pierde toda efectividad como mecanismo discreto de investigación policíaca;

(o) obstruir o interrumpir el ejercicio de las libertades de prensa, reunión y asociación. (1 L.P.R.a. sección 172)."

4. El Reglamento de la Policía indica que se considerará como una falta grave:

"9. Usar lenguaje ofensivo, impropio o denigrante contra el Gobernador, Miembros de la Legislatura, Rama Judicial, Rama Ejecutiva, Agencia, Instrumentalidades del Estado Libre Asociado de Puerto Rico, Miembros de la Fuerza, Funcionarios y Empleados de la Policía, o cualquier otra Institución debidamente constituida o contra ciudadano particular.

14. Desacatar y desobedecer órdenes legales comunicada en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar actos de insubordinación o indisciplina.

22. Hacer manifestaciones públicas que pongan en duda la integridad, honradez o competencia de cualquier funcionario público o persona particular." Véase paginas 49 a la 51 del apéndice de la interventora."